Judge Marshall
delivered the Opinion of the Court in this case — in the decision of which, Chief Justice Robertson took no part.
This was an action of covenant, brought by the heirs of Jeremiah Turpin, against the executors of Samuel Me-Kee, upon a bond executed to them by the said McKee, in the penalty of ten thousand dollars, conditioned for the discharge of the duties required of him by the decree appointing him commissioner, or any other decree that might be made. The decree appointing him, provided for the sale of certain lands, the property of said heirs, which were to be sold on their prayer. A subsequent decree, after stating the return of the commissioner’s report, and its approval, orders that he have leave to withdraw the sale-bonds, for the purpose of collecting the money secured thereby; and it is averred that he did withdraw the bonds for the purpose of collection.
The first count of the declaration alleges, as a breach of the bond sued on, that McKee, instead of collecting the amount of the sale-bonds thus withdrawn, received, in discharge of part thereof, a note on other persons for *302 *-.which he credited on the bond; that neither y ' he nor his executors have collected, nor have the plain-tigg received, the amount of the note so taken, or any part thereof, but thp same is wholly lost to them, and that, by receiving the said note in part discharge of the sale-bonds, and crediting the amount thereof, the said McKee converted so much of the sale-bonds to his own use.
A commissioner appointed by a court of chy. to sell the lands of heirs, gave a bond with condition that he should discharge the duties required of him by the decrees in the case: as it was no part of the condition, that he should pay the money rec’d for the land to the heirs, a breach alleging a failure to pay it to them, when therehadbeenno decree requiring such payment, is ill assigned.
Plea, with leave &c.
The evidence.
The second count avers as a breach, that McKee collected the money secured by the sale-bonds, in part, and in part sold, traded off, and disposed of, said bonds to his own use: whereby he became liable to pay to the plaintiffs, the full amount thereof, with interest; which he and his executors have wholly failed and refused, and still fail and refuse to pay &c.
As the decree did not require the commissioner to pay over to the plaintiffs, the money to be collected by him, the mere fact of collecting a part, did not, as is assumed in the second count, render him liable on his bond, to pay to them the amount collected, until ordered to do so by the Court. The breach laid in the second count is, therefore, not good as to that part of the sale money averred to have been collected, and should perhaps be deemed bad, for want of certainty as to that part of the sale-bonds which is averred to have been disposed of by the commissioner to his own use. But it is unnecessary to decide this point, as there was no attempt to establish by proof, a conversion of any part of the sale-bonds, except that which is specially averred in the first count, which is no doubt the same that was intended to be charged in the second, and was the real matter in issue between the parties.
The defendants pleaded that their testator had not violated the condition of the bond, and had leave to give special matter in evidence.
It was proved that the sale-bonds were taken payable to the commissioner; that, after one of them was due, he received, in part discharge thereof, the note of H. Pawling and J. Yantis, for six hundred and fifty dollars, due one day after date, and payable to himself as commissioner, and gave a 'receipt for that amount on the *303 sale-bond. And the evidence conduced to prove, that this was done with the assent of some of the obligees, acting for themselves and others, and that they had af-terwards received partial payments from Pawling and Yantis, for which they directed credits on the note. Pawling and Yantis were both solvent at the period of this transaction, and for some years afterwards. McKee died in 1826. Pawling died, insolvent, before 1830. Yantis became insolvent in 1831 or 1832. In 1830, McKee’s executors, perhaps with the concurrence, or at the instance, of some of the plaintiffs, sued Yantis on the note, and after some time, obtained judgment for the balance remaining due thereon — the credits appearing all to have been for payments made to some of the present plaintiffs; but this judgment they were unable to collect. It appeared further, that McKee had collected the residue of the sale money, but there was no enquiry as to the disposition which he made of it: which, indeed, was not within the issue, as the declaration showed no valid cause of action as to the money which had been collected.
Instructions,
Verdict &c.
T1\e b°n<3 wllich a decedent gave for the discharge of his duties as commissioner ill chancery to sell the land of heirs, secures no rights to — imposes no duty upon , his personal representatives ; nor do the decrees in the case. If there was no breach by him, there could be none by them, after his death. 'They were not bound to collect any of the sale money remaining due at the death of the testator; nor liable on his bond for a failure to collect it. And—
*303 Upon this evidence, the Court instructed the jury, in substance:—
1. That it was McKee’s duty to have collected the sale money in reasonable time after the bonds became due.
2. That if the plaintiffs had assented to his taking the, note of Pawling and Yantis in discharge of so much of the sale-bond, and .had also assented to the delay in collecting said note, McKee was not liable for the failure to collect it.
3. That in no event, were the defendants liable for more than the injury sustained by the failure to collect this note in McKee’s lifetime.
Under these and other circumstances, which, in their application to this case, seem to be but an amplification of the third proposition above stated, the jury found a verdict for the defendants; and the motion of the plaintiffs for a new trial having been overruled, they prosecute this writ of error for the reversal of the judgment.
The first question now to be considered is, whether , ... . , , there was any error m the instructions given; and the *304 third instruction being the most general in its import,we shall first examine that. Considered independently of the assent of the plaintiffs, as assumed in the second instructions, the third involves these proposition: — I* That there could have been no breach of McKee’s bond except during his lifetime. 2. That his executors could not be made liable upon the bond, except for a breach in his lifetime; and, 3. that, upon the pleadings and evidence in this case, they could only be made liable for a breach in regard to the collection of the particular note mentioned, and for the injury sustained by the failure to collect that note in McKee’s life.
Where the commissioner, having sold the lands as directed by the decree, on credit, had taken bonds payable to himself, and being di rected by an order of ct. to collect them, took, in part payment of one of them, a note on solvent men, also paya ble to himself, and then due:— held, that this was not such a conversion of that amount of the sale bond, nor of itselfsuch a failure in the duty of collecting, as rendered the commissioner, or his ex’ors, liable, as for a breach of his bond.
With regard to the two first of these propositions, we are of opinion that, whatever, in a general point of view, may have been the rights or duties of McKee’s executors, on finding among his papers, (if they did so find it,) either the note of Yantis or one of the sale-bonds payable to him as commissioner, and whatever may have been their liability for a breach of those duties — no right or duty was secured to or imposed on them by the bond, or the decree. They could not themselves have committed a breach of the bond, had it remained unbroken by McKee. They were, therefore, only answerable upon it, for a breach committed by him. As the bond did not bind them to collect the money remaining uncollected at McKee’s death, they are not responsible on the bond for their own failure to collect, or for any of the consequences of that failure; but only for the failure of McKee, (if it amounted to a breach of the bond,) and for the injury consequent upon such failure.
The instruction, however, restricts their liability to the injury arising from the failure to collect this particular note, and it is objected to on this ground. It is contended, and truly, that this restriction assumes that the defendants were not liable for the mei’e fact of changing the securities for the sale money, by taking the note of other persons in discharge of so much of one of the sale-bonds; or, in other words, that the Court decided that, this act of the commissioner was not in itself such a failure to collect that amount of the sale-bond, or such a conversion of it to the use of McKee, as ren *305 dered him liable for it, on the bond and decree binding him to collect.
-: — ;— YY QQyg tii© facts upon which in-«ructions are pre„ dicated, are clear )y proved, and ‘her.e IS n° c0"-dence, if the Ct. anTgive^hetn-sanctions per-3°”^ hypo-thotically, as it ju°ry, suei^tech-nioai en'or “ay reversal™1™ °*
The^fact^(found the commissioaer rec’d the note in payment (wt supra,} and allowed the delay in its collection, with the assent of the heirs, who were entitled to the proceeds, exonerates him from liability for its ultimate loss, by the insolvency of the promissor. If some of the heirs were infants, and not bound by the assent of the adults — still, upon a joint bond to all (given by the cotn’r to comply with the decree,) there could be no recovery for a cause of action which a part of the obligees had discharged. If the guardian of the infants assented, he or she may be liable to them. And if there was no assent for them, their interests might have been protected by a special order of court, which the com’r would have been bound to obey, and for disobeying which, he and his sureties, would be liable on his bond,
Assuming the facts which have been stated on this subject, viz. that the sale-bond and the note were each payable to McKee as commissioner, and that the note * * * was on solvent men and due immediately, we think it entirely clear that this transaction, which did not neces- .. . , n • „ , , , sanly obstruct the collection oí the sale money, but may have been calculated and intended to facilitate it, ■was not in itself either a conversion, or such a failure to collect, as rendered McKee liable on his bond. And that, notwithstanding this change of securities, there was no breach, unless he failed to collect the sale money in reasonable time. Although, therefore, the instruction would have been more formally correct, if it had submitted the assumed facts hypothetically to the jury, and based the conclusion upon their being found true by the jury: yet, as the facts were clearly proved, and there was no countervailing testimony, the plaintiffs were not prejudiced by their assumption of the facts on the part of the Court. And as the breach of the bond, if any, consisted only in the failure of McKee to collect the amount of the sale money secured by the note of Pawling and Yantis — there was no error in referring to the injury arising from that failure, as the limit beyond which the defendants could, in no event, be made liable in this action. If the failure of McKee to collect the sale money secured by that note, was not such as authorized the plaintiffs to charge him with converting it, or the amount secured by it, to his own use, he could not, on his obligation to collect, have been made liable for its whole amount; nor could his executors after his death.
With regard to the second instruction above stated, it is contended that there was no evidence of the assent ' *306 bf the plaintiffs to the delay which occurred in collect" ing the note referred to. But we are of opinion that the facts already mentioned, and others which need not be detailed, tend to show that the plaintiffs, or some of them, had assumed some control over the collection of that note, and might have authorized the jury to infer their assent to the delay. Assuming then, as the jury seem to have found, that they, did assent to the reception of the note and to the delay in collecting it during McKee’s life, we are clearly of opinion, that they could have recovered no damages for such a delay. If all the obligees had been adults, and had thus assented, there could have been no pretence for their right to recover afterwards. The evidence conduces to prove, that those who did assent were competent to act for themselves, and were authorized to act for the infants. And even , if the latter were not directly bound by the assent given, we do not perceive how there could be a recovery in the names of all the obligees in a joint bond, when a part had discharged the cause of action, or never had any. If the guardian of the infants assented, he or she was liable to them for any consequent injury. If there was no assent for the infants, their interests might, on .application, have been protected by a special order or decree of the Court, which the commissioner would have been bound to obey, and for a breach of which, he and his sureties would have been responsible on the bond. Even after McKee’s death, the héirs knowing, as they did, the facts of the case, might have had the balance due on the Yantis note collected: so that it does not appear that the loss of the debt was actually occasioned by the delay in McKee’s lifetime.
Wherefore, there being no substantial error in the instructions of the Circuit Court, and the verdict not being, in our opinion, contrary to the evidence — the judgment is affirmed.