JUDGE HARDIN
delivered the opinion of the majority of the court:
On the 30th day of January, 1857, the appellant, C. B. Sandford, and his wife, and B. W. Foley and wife, executed a mortgage to James G. Arnold of a building and lot on Madison street, in the city of Covington, known as the “Magnolia property,” owned by Sandford and Foley jointly, to secure Arnold in his liability as a co-surety with Foley for Sandford, in a note to the Farmers’ Bank for fourteen thousand dollars.
Afterwards, on the 17th of October, 1865, the sheriff of Kenton county, having in his hands an execution in favor of the bank against Sandford, Foley, and Arnold, for the balance of said debt of four thousand five hundred dollars, with interest from the 17th day of June, 1862, levied the same on one undivided half of said property as belonging to Sandford. Pie also appears to have levied another execution in favor of J. T. Chambers, for about eight hundred dollars, against Sandford and another, in the same manner on the property. And, on the 4th day of November, 1865, the sheriff proceeded to sell Sandford’s undivided half of the property, which was appraised by persons selected for the purpose at ten thousand dollars, and the appellee, W. E. Wade, became the purchaser of ninety-five feet of said lot, fronting on Madison street (the entire lot being one hundred and two feet front upon said street) for six thousand four hundred and eleven dollars and sixty-eight cents, the amount of said two debts and costs.
Sandford brought this suit on the 6th day of December, 1866, charging that Wade had only acquired alien on the property to the extent of his bid, with ten per cent, thereon, and praying to be permitted to redeem the property.
The circuit court having dismissed the petition, Sand-ford has brought the case to this court.
*337 As the sale was not made subject to the mortgage merely, but of Sandford’s interest in the property, sold absolutely, the first and most important question is, whether Sandford is concluded by the sale or estopped from asserting a right of redemption by any act of his. connected with the sale.
It appears, from the testimony of the sheriff, that he made the levy by.the direction of the appellant, and also of Arnold, the mortgagee, and that Sandford told him there was no encumbrance on the property. Both Sand-ford and Arnold were present at the sale; but what they understood or intended should be the effect of the sale upon the right of Sandford to redeem the property, does not fully appear. It is proved that Sandford remarked, at the time, that he intended to redeem the property.; and it does not appear that either he or Arnold made any false representation to Wade, or did' any act calculated to lull him in regard to the existence of the mortgage, which was of record, unless their presence and failure to announce the fact of the encumbrance of the property by the mortgage could be so construed.
By the 1st section of article 15 of chapter 36, Revised Statutes (vol. 1, 488), regulating sales of encumbered prop erty under execution, the right which a purchaser shall acquire under such sales is expressly defined to be “ a lien on such property for the purchase-money, and interest after the rate of ten per centum per annum, from the day of sale until paid, subject to the prior encumbrances.”
In Forrest vs. Phillips, &c. (2 Metcalfe, 197), where Phillips, the defendant in an execution, had, in writing, requested and directed the sheriff to levy the execution “ upon the undivided interest of said Phillips of, in, and *338 to, five hundred acres of land,” and to “ sell the same under said execution,” but without disclosing the fact that it was encumbered by a mortgage of record, this court said:
“Phillips was not bound to notify the sheriff of the existence of the encumbrance, because, as already intimated, the registration of the mortgage, in 1850, had furnished constructive notice of its existence, and it would be going much too far, to say that the failure of Phillips to give to the sheriff additional notice of a fact which he must be presumed to have known at the time the levy was made, must be deemed conclusive or even prima facie evidence of a fraudulent purpose on the part of Phillips.
“ But suppose the latter had been guilty of a positive fraud, by representing to the sheriff that the property surrendered was clear of all encumbrance, what penalty would he have incurred thereby, and what additional rights would such fraud on his part have invested the purchaser with, in view of the provisions of the statute which has been quoted ? The case before us, as presented by the record, does not demand an answer to these questions; but we are by no means prepared to admit that the consequences would be such as are contended for in argument here.”
It can scarcely be pretended that this record presents as strong a case against the appellant for the application of the doctrine of estoppel as that supposed by the questions suggested by the court in the case referred to.
While we recognize the principle, in its fullest extent, that one who willingly induces another to purchase property in ignorance of his title*, or who stands by and knowingly permits another to purchase property to which he sets up title, will be estopped to assert such title after- *339 wards against the purchaser, it seems to us, for obvious reasons, the rule should not be applied in any case in which the facts constituting the estoppel are not satisfactorily established.
Although, according to the sheriff’s recollection, the appellant, at some stage of the transaction, represented the property to him to be unencumbered, and this may have induced him to make the levy on the absolute property instead of the equity of Sandford, as the law required, yet it is by no means certain, according to the sheriff’s testimony, that the appellant’s meaning was not misunderstood by him, and that the latter did not really mean to inform him that the property was not encumbered by other claims than those embraced by the executions. But however this may have been, he does not appear to have made any representation at the sale, or to Wade, calculated to mislead him, and the latter may .as well be presumed to have bid at the sale, with the knowledge of the mortgage which the law presumed him to have, from its registration, as from any inference he may have drawn from the presence and silence of the appellant, especially as the appellant is shown to have labored under the impression himself that the sale being made was of a character which admitted of his right to redeem the property.
An important change in the law in relation to the sale of encumbered property under execution has been effected by the provisions of the Revised Statutes above referred to ; as, under the previous law, the purchaser of property subject to an encumbrance might perfect his title by discharging the encumbrance. A sound and enlightened policy, no doubt, dictated this change as necessary to prevent frauds on the one hand, and the sacrifice of the rights of debtors on the other. But the security *340 thus intended to be given to the rights of defendants in executions would be much impaired if allowed to be defeated by evidence of an estoppel so uncertain and inconclusive as that which is relied upon to sustain the judgment in this case.
Upon the whole, we are of the opinion that Wade, by this purchase, acquired no greater right than a lien on the property for the purchase money paid, and interest at the rate of ten per cent, per annum from the day of sale until paid.
The only remaining question is, whether the currency tendered in court, being such as was paid by Wade on his purchase, is such as he should accept in discharge of his lien on the property, or if it is no,t, whether he is, or was, when the currency was paid in court, entitled to demand the nominal amount of the depreciated paper currency paid by him to be refunded or returned in gold.
It was decided by this court in Stapp vs Phelps (7 Dana, 301), and we see no reason why the principle there laid down is not applicable to this case, that, to preserve and enforce the right of redemption, no formal tender was necessary when the property was claimed absolutely by the vendor, and all right of redemption was resisted. Wade does not, therefore, stand in an attitude to favor his resistance of the right of redemption in a court of equity, on the ground merely that the tender was informal or irregular, and as he paid the purchase price in depreciated currency, it would'seem inequitable and unjust to compel repayment to him of the nominal amount in that which is of greater intrinsic or legal value.
It may be said, however, that, as a majority of this court has, in a late case, decided against the constitutionality of the currency.known as “United States legal *341 tendel’ notes” as a lawful tender in the payment of debts payable in money, according to the laws of this State, and as the statute prescribing the mode of redeeming the property, so far as the purchaser is concerned, provides that it shall be done “ by paying the purchaser his purchase money, with ten per centum per annum interest thereon,” the nominal amount paid by Wade as “purchase money” must be repaid to him in gold and silver; in other words, that the court cannot regard the fact that the payment was not made in gold and silver, but in a depreciated paper currency.
In the case of Stapp vs. Phelps, 7 Dana, supra, where land had been conveyed as security for the nominal sum of one hundred dollars advanced, which was shown to have been advanced in Commonwealth’s paper, a depreciated currency, this court sustained the claim of the grantor to redeem his land upon the payment of the money; but instead of requiring the nominal amount of the debt and interest to be paid in gold and silver, as is insisted upon in this case, it directed “ that a decree may be rendered, requiring the defendant to reconvey the land conveyed to him with costs, upon the complainant’s repaying to the defendant the value of one hundred dollars in Commonwealth's paper, at the date of the deed, with interest thereon.”
We adhere to the opinion heretofore announced by the majority of this court, that the paper currency referred to is not a lawful tender in the payment of debts ; and if it be conceded that the principle is applicable to this case, it may be necessary, on the return of the cause, to ascertain, by reference to a commissioner, the value of the currency paid by Wade when it was paid, with interest thereon, at the rate of ten per centum from the time of its payment.
*342 And although, as the liability to repay the purchase money is one imposed by the statute, and does not arise out of a contract between the parties as an ordinary debt, we doubt the right of Wade to require payment in a currency of greater value than that which he paid for the property. The court below will, on the return of the cause, ascertain the value of the depreciated paper paid by him at the time it was paid as aforesaid, with interest thereon as aforesaid, unless he shall elect to receive payment in the currency known as the legal tender notes of the United States, or that which may be equivalent to it in value; in which case he will be entitled to so receive the sum paid by him, with interest at the rate of ten per cent, per annum, from the time of the payment until the deposit was made of the fund in court, and such legal interest as has accrued thereon since.
But in case no such election shall be made, the court will require the appellant, within a reasonable time, to pay to Wade the valué of the currency paid by him as purchase money as aforesaid, with interest thereon, at the rate of ten per cent, per annum, from the time it was paid by him as aforesaid until paid to him, and permit the appellant to withdraw the fund deposited in court with the interest which may have accrued thereon.
Wherefore, the judgment is reversed, and the cause remanded for further proceedings not inconsistent with this opinion.